**SO ORDERED.**

**SIGNED August 29, 2018.**




ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE:

HENRY G. HOBBS, JR.,
Acting United States Trustee
for Region 5,

    **Plaintiff**

                                               MISCELLANEOUS PROCEEDING
**VERSUS**                                        NO. 16-00201

CHRISTIAN D. CHESSON;
CHRISTIAN D. CHESSON,
(A Professional Law Corporation),

    **Defendants**
----------------------------------------------------------------
REASONS FOR DECISION
----------------------------------------------------------------

      The United States Trustee (the "Trustee") brought this action against Christian D. Chesson ("Chesson")and Christian D. Chesson (A Professional Law Corporation)("Chesson Law Offices" and, together with Chesson, "Defendants") asserting that Defendants impersonated clients filing Chapter 13 cases during statutorily mandated pre-

filing credit counseling briefings and filed false credit counseling verifications with the court. The court took the case under advisement following a trial on the merits. After considering the record and the parties' briefs and arguments, the court rules as follows.

## OVERVIEW OF THE CASE

The Trustee alleges that employees of Chesson Law Offices impersonated debtors during mandatory online credit counseling briefings and that Chesson and his staff knowingly filed false credit counseling verifications in at least eleven (11) Chapter 13 cases filed in the Lake Charles Division of the Western District of Louisiana from July 2014 through April 2016. The result of Defendants' conduct, according to the Trustee, is that the debtors in these eleven cases were ineligible debtors and this fact was fraudulently concealed from the court.

An individual who intends to file for relief under the Bankruptcy Code must first complete a "briefing" from an "approved budget and credit counseling agency" during the 180 days prior to filing a bankruptcy petition. 11 U.S.C. § 109(h). Section 109(h) requires that this briefing outline "the opportunities for available credit counseling," and that it assists an individual contemplating bankruptcy to perform "a related budget analysis." 11 U.S.C. § 109(h). An individual who does not complete this

-2-

requirement prior to filing for relief under the Bankruptcy Code is not an eligible debtor. _Id_. While courts differ over whether ineligibility under this provision is jurisdictional, the consensus is that the failure to comply with this credit counseling requirement mandates dismissal of the case. See <u>Adams v. Zarnel</u> (<u>In re Zarnel</u>), 619 F.3d 156, 166-71 (2nd Cir. 2010) (section 109(h) is not jurisdictional); <u>In re Mitrano</u>, 409 B.R. 812 (E.D. Va. 2009) (failure to comply with section 109(6) requires dismissal and a bankruptcy court-absent "extraordinary circumstances"—has no discretion to excuse non-compliance with the credit counseling requirement). Credit counseling agencies are reviewed and approved by the United States Trustee's Office. 11 U.S.C. § 111(b). United States Trustee regulations provide that approved credit counseling services may provide the briefings required by section 109(h) in person, or by phone or internet. If provided by phone or internet, these regulations require the agency to verify the identity of the individual receiving the briefing. 28 C.F.R. § 58.20(h). For each of the eleven cases covered in the Trustee's complaint, Defendants used Abacus Credit Counseling Agency ("Abacus"), a Trustee approved agency. Section 521(b) of the Bankruptcy Code requires an individual debtor to file a certificate – the "Individual Debtor's Statement of Compliance with Credit Counseling Requirement" (the "Credit Counseling Verification") – with the bankruptcy petition

-3-

attesting under penalty of perjury that the credit counseling briefing was completed during the 180 days prior to filing the petition. <u>See</u> Official Form 1, Exhibit D.[1]

The trustee contends that Chesson and his staff filed false Credit Counseling Verifications in the following eleven cases:

```
14-20690  Fodrie, Karen
14-21073  Cooley, Roger
15-20129  Simon, Emma
15-20199  Williams, Charles & Terri
15-20204  Landry, Michael & Jamie
15-20242  Stansberry, Wayne & Patina
15-20343  Jackson, Ryan & Angel
15-20384  Williams, Justin & Lesley
15-20669  Shortt, Paul & Shellie
15-20939  Brignac, Cynthia
16-20677  Vidrine, Fred
```

The Trustee contends that during the period these cases were filed – July 25, 2014 through April 8, 2016 – Defendants' staff impersonated individual debtors during telephone and online credit counseling briefings, and then prepared and filed credit counseling verifications that falsely stated that the debtors had completed the briefing prior to filing their cases. According to the Trustee, these debtors were not present when the credit counseling briefing occurred.

The Trustee presented testimony from debtors in each of the eleven cases stating that they did not participate in a credit

---

[1]This was the form and requirement in place when the eleven cases at issue were filed.

-4-

counseling briefing prior to Defendants filing their bankruptcy cases. The Trustee also presented testimony from Defendants' past and present employees with respect to credit counseling. Three of Chesson's former employees testified that they completed the credit counseling briefings for the debtors without any involvement by the debtors prior to the filing of their cases. The Trustee also introduced records from Abacus, including transcripts of the credit counseling sessions and time records for the eleven cases here. The Trustee contends that these records support the testimony of Defendants' former employees and clients that the clients did not actually participate in the required credit counseling briefings.

Defendants deny that their staff impersonated debtors in credit counseling sessions. They contend that the testimony of the former clients and former employees is not credible. They suggest that the testimony of these former clients was influenced by other lawyers who are their competitors. Defendants further contend that, even if his staff impersonated clients in these eleven cases, they were not aware of this practice and would not have condoned it.

The Trustee also contends that Defendants violated 11 U.S.C. § 528(a) by not executing a written contract with their clients within five (5) business days in seven (7) of the eleven cases here and by not providing those clients with a copy of the executed and

-5-

completed contract. Specifically, Chesson did not sign the contracts in these cases. Chesson contends that his signature on the contracts was not required for the contracts to be "fully executed" within the meaning of section 528(a). He also contends that a signature on a contract is not a material requirement of that provision as required to support disgorgement under 11 U.S.C. § 526(c)(1).

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

## OVERVIEW OF THE TRIAL RECORD

### A. **Testimony of Former Clients**.

The Trustee presented testimony from the debtors and joint debtors in each of the 11 cases. A total of 15 debtors testified: Cynthia Brignac, Charlie Williams, Roger Cooley, Karen Fodrie, Lesley Williams, Michael Landry, Angel Jackson, Ryan Jackson, Patina Stansberry, Wayne Stansberry, Shellie Short, Paul Short, Justin Williams, Fred Vidrine, and Emma Simon. Each of these former clients testified that they did not participate in a credit

-6-

counseling briefing from Abacus prior to the filing of their cases. (1 Trial Transcript ("Tr. Trans.") 138, 165, 190, 199, 231, 262, 266-67, 283-85, 306-07, 331, 333-34, 347-48, 3536, 375-76, 382, 392, 396, 408-09, 411; 2 Tr. Trans. 15, 22, 45-46, 59, 194, 202). When these former clients were shown copies of the transcripts from their credit counseling sessions provided by Abacus, they testified that they did not provide any of the responses reflected nor were they present when Defendants' employees entered those responses. (1 Tr. Trans. 139-40, 165-67, 191, 193-94, 231-33, 267-69, 285-86, 307-09, 334-36, 348-51, 376, 392-93; 2 Tr. Trans. 16-18, 47-49, 194-97). Several of the briefings included an online quiz at the end of the briefing. For these sessions, the debtors testified that they did not take the quiz or input the responses reflected on the transcript. (1 Tr. Trans. 168-69, 195-96, 235-36, 309-10, 336, 351, 378, 2 Tr. Trans. 197-98).

Defendants challenge the credibility of all of the former clients who testified at trial by pointing to their signed credit counseling verifications attesting that they had completed the credit counseling briefing, and also to their testimony at the Section 341 creditor meetings. Each credit counseling verification states, above the signature line, that "I certify under penalty of perjury that the information provided above is true and correct." (Def. Exh. 6). Each of the former clients who testified at trial

-7-

admitted to signing the verifications. (1 Tr. 142, 184-85, 214, 255, 278, 295, 328, 343, 363, 386, 402, 411; 2 Tr. Trans. 21, 37, 67, 216). During their Section 341 creditor meetings, each debtor was questioned on whether they had read all of their bankruptcy pleadings and whether these pleadings were true and correct. Transcripts of these Section 341 meetings show that at least seven of the testifying former clients answered this question affirmatively: Roger Cooley, Karen Fodrie, Fred Vidrine, Patina Stansberry, Emma Simon, and Ryan and Angel Jackson. (1 Tr. Trans. 216-19, 257-60; 2 Tr. Trans. 65-66; Def. Exh. Nos. 5A, 5B, 5C, 5D). These debtors were not, however, specifically questioned about credit counseling. Chesson contends that these false verifications and false testimony in the Section 341 meetings undermines the credibility of the former clients who testified at trial.

Defendants also contend that the testimony of these former clients was influenced by two bankruptcy attorneys who are competitors of Chesson: Romelzy Willis and Gerald Casey. (Defendants' Post-Trial Brief at 36-41). Ten of the former clients who testified at trial became bankruptcy clients of Romelzy Willis,[2] and three of the testifying former clients were later

_____

[2]Specifically, Charlie Williams, Roger Cooley, Karen Fodrie, Michael Landry, Angel and Ryan Jackson, Patina and Wayne Stansberry, Justin Williams, and Emma Simon.

-8-

represented by Gerald Casey.[3]  Defendants contend that Willis and
Casey are rivals who have attempted to undermine his practice.[4]
Defendants point to e-mails showing that Casey and Willis
communicated with the Trustee about the facts alleged in the
Trustee's complaint in this case.[5]  Both Casey and Willis were
included on Defendants' witness list, but were not called as
witnesses at trial.

Finally, Defendants challenge the credibility of several of
the former client witnesses on the grounds that their testimony
demonstrated a lack of recollection of relevant events,[6] that their
testimony was inconsistent with what happened in their cases,[7] and,
in one case, a former client stated that she was unaware why her
bankruptcy case was dismissed; she later admitted that it was
dismissed because she had failed to file tax returns or pay sales
taxes for a business.[8]  Defendants also point to testimony by
Shellie Shortt that her bankruptcy pleadings, including the Credit

---

[3]Specifically, Cynthia Brignac, Shellie Shortt, and Paul
Shortt.

[4]2 Tr. Trans. 285-86, 335-36; Def. Exh. Nos. 1, 2.

[5]Def. Exh. Nos. 1, 2.

[6]1 Tr. Trans. 143-44, 159-60, 197, 230, 239, 246, 291, 300;
2 Tr. Trans. 29-34, 63-65.

[7]2 Tr. Trans. 338; 1 TR. Trans. 245-51; 2 TR. Trans. 178.

[8]1 Tr. Trans. 358, 362-63.

16-00201 - #63  File 08/29/18  Enter 08/29/18 16:10:51  Main Document  Pg 9 of 44

Counseling Verification, were not fully explained to her. Defendants point to testimony by Shortt's co-debtor husband, Paul Shortt, that the documents they signed were explained to them. (1 Tr. Trans. 400-06, 412, 422, 416). With respect to Emma Simon, Defendants point to trial testimony with respect to signing a contract with Romelzy Willis and her knowledge about the status of her social security disability application. (2 Tr. Trans. 200, 207-14).

**B. <u>Testimony of Chesson's Former Employees</u>.**

The Trustee presented the testimony of four former employees of Defendants: (1) Mary Lejeune worked as a bankruptcy paralegal from October 2013 through December 2014; (2) Haleigh Turner assisted with bankruptcy cases from January 2015 through February 2016; (3) Misty Bailey assisted with bankruptcy cases for most of 2016; and (4) Brandi Domingue assisted with bankruptcy cases from October 2013 through January 2016. Lejeune, Turner, and Bailey all testified that they completed credit counseling briefings for clients while employed by Defendants without the clients being present. Lejeune testified that Defendants' senior paralegal, Karla Latour, and other employees instructed her to complete the briefings without the clients being present. Lejeune testified that she selected uniform answers to security questions that she used for all debtors and inputted each client's financial

-10-

information without the client being present during the Abacus briefings. (1 Tr. Trans. 57-59, 60-64). Lejeune testified that she "clicked" through the Abacus counseling sessions and participated in the online "chat sessions" used to ensure that the debtors participated in the briefings. (1 Tr. Trans. 62-64). Miss Lejeune testified that she completed credit counseling briefings without the client being present in approximately 80% of the cases that she handled. (1 Tr. Trans. 65-66). Turner and Bailey provided similar testimony about completing credit counseling briefings on behalf of clients without their participation. (1 Tr. Trans. 22-23, 27-28, 96-98, 102-09). Both testified that Carla Latour and other employees instructed them to complete the briefings for the clients without their participation. (1 Tr. Trans. 27-28, 96-98). Both also testified that they used uniform answers to the security questions. Turner testified that she completed briefings without clients present over 100 times during the period she was employed by Chesson. (1 Tr. Trans. 33-34). Bailey testified that Karla Latour instructed her to "just get it done" and "don't take too long" with respect to the credit counseling briefings. (1 Tr. Trans. 98). Bailey testified that Latour met with the bankruptcy staff after the office was notified of an investigation of their credit counseling practices, and instructed all of the employees to require that clients be present

-11-

during credit counseling briefings. (1 Tr. Trans. 97-99). Bailey testified that, prior to this point, she completed briefings in approximately 80% of the cases she handled. (1 Tr. Trans. 108).

The fourth former employee, Brandi Domingue, testified that she did not have any involvement in assisting clients with credit counseling until the last several months of her employment with Chesson. (2 Tr. Trans. 71-73). After that point, she was involved with credit counseling for Chapter 7 clients, but not Chapter 13 cases. She testified that Chapter 13 credit counseling was handled by Lejeune and other employees. The Trustee, however, examined Domingue on a December 2, 2014 e-mail that she sent to Vanissa Cooley, the wife of Roger Cooley. Roger Cooley is one of the former Chapter 13 clients who testified that he did not participate in his credit counseling briefing. (1 Tr. Trans. 190). In this e-mail, Vanissa Cooley e-mailed:

> "Brandi, we don't want to miss out on any steps here. We received letters of solicitation for debtor education, (second course) that they are saying is required. Can you tell me if this is required and is [sic] so what was the first course? Thank you, Vanissa."

(Trustee Exh. 37 at 35). Domingue responded:

> "*We have already completed this course for you*. If it is from a company called Sage, please disregard."

Id. (emphasis added) Domingue had no explanation for what she had written.

Defendants' first challenge the credibility of these former employees on the grounds that they had admitted to suborning perjury by completing and filing falsified Credit Counseling Verifications. With respect to Lejeune, Defendants elicited testimony that she had worked as a bankruptcy paralegal before working for Defendants and was familiar with the credit counseling process. (1 Tr. Trans. 55, 68, 70-71). Lejeune testified on cross-examination that she knew the clients were signing the verification under penalty of perjury. Id. Bailey and Turner likewise conceded that they knew that clients were signing the verification under penalty of perjury. (1 Tr. Trans. 118-19, 122-25, 50). Bailey testified that she had received an oral assurance from the U.S. Trustee that she would not be prosecuted if she agreed to testify. (1 Tr. Trans. 118-19). Bailey also testified that no such agreement was reduced to writing and that there had been no discussions to finalize any formal agreement with the Trustee in advance of her testimony. Id.

Defendants also point to testimony that they argue shows inconsistencies in testimony of these former employees with respect to the extent to which attorneys met with clients and other office procedures. (1 Tr. Trans. 35-40, 76-78, 142, 170, 197, 297, 316-17, 353-54; 2 Tr. Trans. 96, 106, 224, 233-34, 262).

-13-

**C. Testimony of Chesson's Current Employees.**

Chesson's current senior bankruptcy paralegal, Karla Latour, testified that she has worked for Chesson's firm since 2006, and works directly with Chesson and Wade Kelly. (2 Tr. Trans. 105-6). Latour testified that Chesson's office coordinated online credit counseling briefings. (2 Tr. Trans. 113-117). She testified that employees would sit with clients and assist them in personally completing the credit counseling briefing. (Id.). Beginning in 2013, however, Latour testified that she did not participate in any of these briefings. (Id.). She also testified that she did not train employees on credit counseling; instead, they trained each other. (Id.). Latour testified that had she known that clients were not participating in the briefings and that Credit Counseling Verifications were false, she would have reported this to Chesson or Wade Kelly. (2 Tr. Trans. 176). She testified that she never instructed any of Defendants' employees to impersonate debtors during online credit counseling briefings. (Id.).

**D. Testimony of Chris Chesson.**

Chris Chesson testified that he had no involvement in credit counseling briefings or in preparing the verifications signed by the clients in the cases at issue here. He testified that he never instructed Latour or any other employee to take credit counseling briefings for debtors or to file false Credit Counseling

-14-

Verifications. (2 Tr. Trans. 334-35). Chesson also testified about efforts by Romelzy Willis and Gerald Casey to harm his practice and his reputation. (Tr. Trans. 335-37). For example, Chesson cites e-mails sent by Casey to the Trustee disparaging Chesson and suggesting that Chesson may try to influence the testimony of potential witnesses. (Def. Exh. Nos. 1, 2).

### E. **Testimony of Wade Kelly**.

Wade Kelly testified that he has served as counsel in Chesson's firm since 2006. He and Chesson split the fees from bankruptcy clients 50-50 after deductions for staff and office expenses. (2 Tr. Trans. 222-23). Kelly was not involved in the initial interviews of clients or credit counseling briefings during the period at issue in his case. Kelly testified that he reviewed documents prepared by Chesson's staff as well as financial documents provided by clients. (2 Tr. Trans. 226). He would also draft a plan in Chapter 13 cases. (Id.). Filings with the court, however, were filed under Chesson's electronic signature and his ECF login and password. (2 Tr. Trans. 307). The Trustee's complaint does not allege that Mr. Kelly was involved in the filing in the record of the false pleadings, nor is there any evidence of his involvement.

### F. **Credit Counseling Records**.

The Trustee further introduced records from the Abacus credit counseling service reflecting briefings that were purportedly

completed in the eleven cases at issue here. According to the Trustee, these records support the testimony of Lejeune, Turner, and Bailey that they created uniform answers to security questions such as "what is your city of birth?" and questions about individual households. These records show that the answer "Lake Charles" was typically provided as an answer to the security question "what is your city of birth?" even though five of the former clients who testified were not born in Lake Charles and testified that they never provided "Lake Charles" as the answer to any security question. (1 Tr. Trans. 191-92, 349, 377; 2 Tr. Trans. 47, 195; Trustee Exh. Nos. 4, 7, 10, 13, 16, 19, 22, 28, 31, 34). The Abacus records also show answers to questions about debtor households that did not accurately reflect the household of the debtors who purportedly participated in the briefing. (See, eg., Trustee Exh. No. 28 at 5). Specifically, Fred Vidrine's Abacus transcript indicates that he responded that he did not have children despite the fact that he has a ten year old child. (2 Tr. Trans. at 48).

The Abacus records introduced by the Trustee also reveal the length of each credit counseling briefing:

| | | |
|---|---|---|
| 14-20690 | Fodrie, Karen | 9 minutes, 48 seconds |
| 14-21073 | Cooley, Roger | 19 minutes, 54 seconds |
| 15-20129 | Simon, Emma | 8 minutes, 27 seconds |
| 15-20199 | Williams, Charles & Terri | 15 minutes, 28 seconds |
| 15-20204 | Landry, Michael & Jamie | 1 day, 19 hours |

-16-

| 15-20242 | Stansberry, Wayne & Patina | 19 minutes, 44 seconds |
| 15-20343 | Jackson, Ryan & Angel | 12 minutes, 21 seconds |
| 15-20384 | Williams, Justin & Lesley | 5 hours, 34 minutes |
| 15-20669 | Shortt, Paul & Shellie | 15 minutes, 47 seconds |
| 15-20939 | Brignac, Cynthia | 11 minutes, 12 seconds |
| 16-20677 | Vidrine, Fred | 29 minutes, 2 seconds |

According to the Trustee, the times for most of the debtors in 11 cases at issue are much shorter than the average time Abacus estimates it would take to complete a credit counseling briefing. Abacus records reflect an average time to completion of approximately one hour. (Trustee Exh. Nos. 35, 39, and 29). In the case of Fred Vidrine, the Abacus briefing in the case filed by Chesson was completed in 29 minutes and 2 seconds. (Trustee Exh. No. 28). When he refiled a case with Gerald Casey, he completed the same course in 49 minutes, 28 seconds. (Id.).

## G. **Signed Credit Counseling Verifications**.

The Trustee also introduced evidence that, in seven of the eleven cases here, Chesson's staff obtained the clients' "wet signatures" on Credit Counseling Verifications on dates *prior to* the dates that the Abacus credit counseling briefings actually took place. (See Trustee Exh. Nos. 5-6, 11-12, 14-15, 20-21, 23-24, 26-27, and 29-30). The Trustee contends that these pre-dated and signed verifications reveal Defendants' fraudulent scheme because the clients attested to having completed the briefings before they even occurred.

-17-

**H. Client Contracts.**

The Trustee introduced exhibits that he contends show that Chesson failed to sign and execute client contracts in seven (7) of the eleven cases at issue. (Trustee Exh. Nos. 2, 5, 11, 14, 17, 23, 29). While these exhibits demonstrate that clients were provided with written contracts, the Trustee contends that these contracts did not comply with the requirements of 11 U.S.C. § 528(a) because Chesson did not sign the contracts.

## FINDINGS AND CONCLUSIONS

**A. The Burden of Proof.**

The parties disagree on the Trustee's burden of proof. Defendants argue that a "clear and convincing" standard applies to the Trustee's claims for monetary sanctions, disgorgement, and disciplinary sanctions. The Trustee concedes that the disciplinary relief requested in the complaint is subject to a clear and convincing standard. (Trustee's Brief on the Burden of Proof at 3). The Trustee also acknowledges a split in case law over whether a clear and convincing standard applies to monetary sanctions imposed under a court's "inherent powers." (Id. at 4). But, the Trustee argues that the claims for sanctions and disgorgement in Counts I through IV of the complaint are subject only to a "preponderance of the evidence" standard. A clear and convincing standard in a civil case is appropriate where "particularly

-18-

important individual interest or rights are at stake." <u>Grogan v.</u> <u>Garner</u>, 498 US 279, 286 (1991) (quoting <u>Herman & Macclean v.</u> <u>Huddleston</u>, 459 US 375, 389, 90 (1983)).  While the court agrees with the Trustee that a preponderance of the evidence standard applies in routine cases where a court reduces--or even orders disgorgement of--fees under 11 U.S.C. §§ 329-330, this is not a routine case.  Given the extent of the sanctions requested in this case and the request for disciplinary action against Mr. Chesson, the relief requested by the trustee is punitive in nature and implicates particularly important individual interests or rights. The Trustee, therefore, must establish all of its claims for relief by clear and convincing evidence.

   **B.  <u>Falsification of Credit Counseling Certificates</u>.**

   The court finds by clear and convincing evidence that Defendants filed false Credit Counseling Verifications with the court in the eleven cases covered by the Trustee's complaint. Debtors from each of these eleven cases testified that they did not participate in a credit counseling briefing prior to filing their case.  This testimony is consistent with the testimony of Chesson's former employees that they completed these briefings for the debtors without the debtors being present and then prepared and filed Credit Counseling Verifications that falsely stated that the debtors completed their briefings.  It is also consistent with the

-19-

records of the Abacus Credit Counseling Service showing completion times for these debtors that were below the average time to complete the briefing. The testimony is also consistent with the evidence showing uniform (and inaccurate) answers to Abacus' security questions. The court finds the testimony of Defendants' former employees to be credible that they were instructed to complete credit counseling for debtors and to file Credit Counseling Verifications that falsely stated that the debtors had completed the briefings. The court further finds that Defendants' senior paralegal, Karla Latour, was responsible for overseeing the pre-filing credit counseling process, and that she instructed the three former employees who testified to complete the briefings on behalf of debtors outside their presence. While the Trustee's complaint focuses on the eleven cases at issue, the court also finds, based on the testimony of these former employees, that this scheme resulted in the filing of false credit counseling verifications in other cases not identified by the Trustee. Specifically, Mary Lejeune testified that she completed credit counseling briefings without debtors present in approximately 80% of the cases that she handled. Similarly, Haleigh Turner testified that she had completed briefings well over 100 times during her employment by Defendants. (1 Tr. Trans. 33-34).

Defendants challenge the credibility of the Trustee's witnesses--both former clients and former employees--based on their

-20-

roles in the scheme to file false Credit Counseling Verifications.
He argues that the former clients' testimony is not credible
because they engaged in perjury by signing the written
verifications under penalty of perjury and by falsely testifying at
the Section 341 meetings.  They contend that the former employees
who testified are not credible because they suborned perjury by
having the debtors sign falsified Credit Counseling Verifications.
Defendants are correct that the individual debtors who testified
are responsible for ensuring the accuracy of the pleadings they
sign--including the Credit Counseling Verification--filed on their
behalf.  They cannot escape responsibility for the false
verifications filed in their cases.  But, Chesson glosses over the
fact that these former clients are not trained lawyers and were
looking to Chesson and his staff to guide them through the
bankruptcy process and explain the meaning of the documents that
they are signing.  Given the consistency of the testimony of the
fourteen former clients who testified to the key facts supporting
the Trustee's case--that they did not take credit counseling--and
their reliance on Chesson's staff to guide them through the
process, the court finds their testimony credible.

　　　With respect to the former employees who testified, Chesson is
also correct that they cannot escape responsibility in a scheme
that resulted in the filing of at least eleven and likely more

-21-

false Credit Counseling Verifications with the court. Their testimony, however, is consistent in material respects with the testimony of the fourteen former clients. The testimony of Mary Lejeune, Haleigh Turner, and Misty Bailey is also consistent as to the key fact that they completed credit counseling briefings for clients and prepared and filed false Credit Counseling Verifications. Given the consistency of this testimony as to the key facts supporting the Trustee's case, the court finds this testimony credible.

Chesson also points to inconsistencies in the testimony of the former clients and former employees. These alleged inconsistencies do not overcome the credibility of the testimony on the key facts alleged by the Trustee. The inconsistencies identified by Defendants generally revolve around collateral, non-material facts. For example, Defendants point to testimony by Mary Lejeune that Chesson did not meet with clients during initial consultations, that she would sign Chesson's name on pleadings, that she would often make legal decisions for clients, and that credit counseling appointments were not placed on office calendars. Defendants point to testimony by multiple witnesses that appears to contradict Lejeune's testimony with respect to these aspects of the office's procedures. But, these alleged contradictions do not go to the core material facts alleged by the Trustee with respect to the

-22-

filing of falsified Credit Counseling Verifications. Defendants also point to inconsistencies in the testimony of the former clients. These inconsistencies and the instances of faulty memories highlighted by Defendants, like the inconsistencies alleged with respect to the former employees, go to collateral, immaterial aspects of their testimony. For example, Chesson points out that Cynthia Brignac testified that she was told about the credit counseling briefing, but she could not remember the details of that explanation. Chesson also points out that Karen Fodrie testified that she has no memory of signing the credit counseling verification. These inconsistencies, even if true, do not overcome the credibility of these witnesses in light of the consistency between their testimony, the testimony of the other former clients, and the testimony of Chesson's former employees.

Defendants also challenge the credibility of the fourteen former clients who testified on the grounds that the "intervention" of other lawyers who were his competitors "tainted" their testimony. Specifically, Defendants point to many of the testifying clients who became clients of Romelzy Willis and Gerald Casey. They contend that these lawyers are attempting to harm his practice and that they used the testimony of his former clients in that effort. Even assuming that Willis and Casey are direct competitors of Chesson, there is no evidence in the record showing

-23-

efforts by Casey or Willis to alter or otherwise change the testimony of these witnesses as to material, core facts alleged by the Trustee. The former clients who subsequently retained Willis and Casey did not testify to any attempt to tamper with or otherwise modify their testimony to the benefit of their new lawyers. Willis' and Casey's role in this case is consistent with the fact that, as two of the primary filers of Chapter 13 cases, they were representing a number of Chesson's former clients. Moreover, given that these clients had filed bankruptcy cases through Defendants that involved the filing of fraudulent pleadings, their involvement in this case, and their communications with the United States Trustee, would be consistent with their obligations to represent the interests of their new clients. Finally, despite the suggestion of witness tampering, Defendants did not call either Casey or Willis as witnesses in this case. Accordingly, the court places little weight on Defendants' contention that the testimony of his former clients was influenced by Casey's and Willis' interest in undermining his practice.

Defendants also challenge the sufficiency of the Abacus documents in showing that their employees had impersonated debtors during the credit counseling briefings. They argue that the completion times for the eleven cases at issue are not sufficient to demonstrate that the clients did not actually complete the

-24-

briefings in person.  They also challenge the record with respect to answers provided to security questions and point to the deposition testimony of an officer of Abacus that it would not be unusual for employees of bankruptcy lawyers to establish uniform answers to security questions to facilitate the briefings for their clients and to obtain certificates demonstrating the completion of the briefings.  The court agrees with Chesson that, ***standing alone***, the Abacus records are not sufficient to establish that his employees impersonated debtors during credit counseling briefings and that his office filed false Credit Counseling Verifications.  However, this evidence is consistent with and corroborates the testimony of Defendants' former clients and the former employees. The record reflects that the average time to complete an Abacus credit counseling briefing was just over one hour.  In nine of the eleven cases at issue here, the briefings took less than 30 minutes and a majority were less than 15 minutes.  Moreover, one of the debtors, Fred Vidrine, re-took the Abacus credit counseling briefing in a *subsequent* case with a new lawyer and took 20 minutes longer to complete the same briefing that he purportedly completed when represented by Defendants.  With respect to the case filed by Defendants, the Abacus records reflect that Vidrine complete the briefing in approximately 29 minutes.  Vidrine completed the same Abacus briefing in person when represented by Gerald Casey in

-25-

August 2016, and completed the course in just over 49 minutes. Standing alone, this evidence is not sufficient to establish the fraudulent scheme alleged by the Trustee. This evidence, however, is consistent with, and corroborates, the testimony of Defendants' former clients and employees.

With respect to the uniform answers to security questions, Chesson is also correct that this evidence standing alone does not support a finding of fraud. However, when considered in the context of the time completion records and the witness testimony presented by the Trustee, this evidence supports the Trustee's allegation of a scheme to circumvent the Bankruptcy Code's credit counseling requirements and to file false Credit Counseling Verifications with the court.

Defendants also point to the testimony of one of the former employees, Brandi Domingue, who testified that she was never instructed to complete credit counseling briefings on behalf of clients or to file inaccurate credit counseling verifications. This testimony, however, does not undermine the testimony of the other former employees or the former clients who testified. The Trustee points out that Domingue had no involvement with the credit counseling briefings until the last months of her employment with Chesson. The Trustee also challenges Domingue's credibility by pointing to a December 2, 2014 e-mail involving counseling. In

that e-mail, a debtor inquired about credit counseling and Domingue responded "*we have already completed this course for you*." (Trustee Exh. 37 at 35) (emphasis added). Considering this e-mail and her testimony about her limited role with respect to credit counseling, Domingue's testimony does not credibly refute or otherwise undermine the testimony of the fourteen former clients and three former employees who testified that Credit Counseling Verifications filed in these 11 cases were false.

### C. **The Role of Chesson's Staff.**

Karla Latour was the only current Chesson Law Office to testify at trial. Latour testified that she did not have direct involvement with the credit counseling briefings for any of the eleven cases at issue here. She testified that she never directed any of the employees who worked for her to impersonate debtors during credit counseling briefings, nor was she aware that the Credit Counseling Verifications for these clients were false. In light of the testimony of Defendants' former employees--which is consistent with the testimony of their former clients--the court does not find Ms. Latour's testimony to be credible. Mary Lejeune, Haleigh Turner, and Misty Bailey all testified that Ms. Latour and other Chesson Law Offices employees instructed them to take the online credit counseling briefing for clients without the clients' involvement and to prepare and file verifications that falsely

-27-

stated that the clients had actually completed the briefings. (1 Tr. Trans. 57-58, 60-63, 70, 22-23, 27-28, 96-98). Accordingly, the court finds by clear and convincing evidence that Ms. Latour not only knew about the conduct outlined in the Trustee's complaint, but directed employees of Chesson Law offices to impersonate debtors during credit counseling briefings and to prepare and file credit counseling verifications that falsely stated that the clients had completed the briefings.

   **D.  <u>The Role of Chris Chesson</u>**.

   Chesson denies having knowledge that his employees were impersonating debtors during credit counseling or that false Credit Counseling Verifications were filed with the court. (2 Tr. Trans. 334-35, 322-23). He testified that he was not involved in training paralegals and never directed any of his staff to complete the credit counseling briefing on behalf of clients or to prepare and file false Credit Counseling Verifications. (<u>Id</u>.). The record does not contradict Chesson's assertions. The court cannot find by clear and convincing evidence that Chesson personally directed the scheme testified to by his former employees and clients. But, this does not absolve Chesson from responsibility for the scheme or the fraudulent filings. The Trustee has established by clear and convincing evidence that the false Credit Counseling Verifications were filed under Chesson's electronic signature using his CM/ECF

-28-

electronic filing password.  Under the Federal Rules of Bankruptcy
Procedure, the Federal Rules of Civil Procedure, and the Louisiana
Rules of Professional Conduct, Chesson was responsible for ensuring
the truthfulness and accuracy of the pleadings he filed.  Here, the
false pleadings filed on his behalf were engineered through a
scheme created and overseen by Chesson's own employees.  This is
not a case where a lawyer is being held accountable for false
information provided by a client that could not be discovered after
a reasonable inquiry.  Rather, Chesson abdicated his
responsibilities under the Federal Rules and Louisiana Rules of
Professional Conduct to properly supervise his employees and ensure
that the pleadings filed under his signature are truthful.  These
breaches resulted in the filing of false pleadings in at least
eleven and likely many more cases.

In In re Chang, 2012 WL 6019310 (D. Md. Nov. 26, 2012), the
court was confronted with a similar scheme involving the
impersonation of debtors during credit counseling briefings and the
filing of file false Credit Counseling Verifications.  As in this
case, the lawyer charged with misconduct denied knowledge of the
scheme and blamed former employees for filing fraudulent Credit
Counseling Verifications.  The court in Chang rejected her plea of
ignorance and held that her mismanagement and failure to supervise
the employees who filed the false statements under her electronic

-29-

signature warranted a disciplinary sanction.  In that case, Change was suspended from practice for a period of one year.  Similarly, here, the court finds that Chesson's abdication of his responsibility to oversee and manage the employees who were dealing with his clients rises to the level of bad faith and that his profession of ignorance about the conduct of his employees is not a defense to the Trustee's claims.

### E.  Client Contracts.

With respect to the execution of client contracts and the compliance of those contracts with 11 U.S.C. § 528, the court finds in favor of the Trustee.  Section 528(a)(1) states that a debt relief agency shall "not later than five business days after the first date on which such agency provides any bankruptcy assisted services to an assisted person, but prior to such assisted person's petition under this title being filed, **execute** a written contract with such assisted person that explains clearly and conspicuously --(A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment...."  (Emphasis added).  Section 526(c)(1) provides that any contract that does not comply with the "material requirements of this section" is void.  Chesson contends that his failure to sign contracts in these 7 cases does not trigger this provision because the requirement of a signature is not a "material

-30-

requirement" of section 528. In that regard, he cites <u>In re Humphries</u>, 453 BR 261,269 (E.D. Mich. 2011).

As the Trustee points out in response, the <u>Humphries</u> case is distinguishable. In <u>Humphries</u>, an attorney failed to sign client contracts within the five-day period required by section 528. The court found this breach was merely a technical violation because the contracts were ultimately signed, just were not signed within the five-day period mandated by section 528. Here, the evidence in the record establishes that the contracts were ***never*** signed in the seven cases identified by the Trustee. These contracts do not identify Christian Chesson as the lawyer responsible for the case, but merely list "Bankruptcy Law Clinic of Louisiana" which, as the Trustee points out, is a defunct trade name.

The statute expressly requires that the contract be "executed." Execution in the context of a written contract occurs by "fulfilling the necessary legal requirements" for enforcement. Blacks Law Dictionary (10th Ed. 2014). A party's signature to a contract for legal services is such a requirement. To argue that Chesson's contracts were fully executed without his signature when the contract merely lists a defunct trade name strains credulity. Accordingly, the court finds that the unsigned contracts in the seven cases identified by the Trustee are material violations of the requirements of 11 U.S.C. § 528.

-31-

**F. Remedies.**

The court now turns to the relief requested by the Trustee. In counts I through IV, the Trustee seeks disgorgement of the fees paid in the eleven cases identified in his complaint. The statutory basis for the Trustee's requested relief is 11 U.S.C. § 526(c)(5) based on violations of section 526(a)(1) (failure to perform a promised service), section 526(a)(2) (false statements in documents filed with the court), 11 U.S.C. § 526(c)(1) (improper execution of written contracts), and 11 U.S.C. §§ 329, 330 (court's authority to review and approve fees).

**1. Bad Faith**

Defendants first contend that the record does not support an award of sanctions and disgorgement because this relief requires a showing of bad faith. They contend that the record does not support a finding of bad faith because there is no evidence in the record that Defendants directed or knew about the actions of Latour and other employees. This argument does not defeat the Trustee's request for monetary relief.

First, the court's power to review, approve, and reduce (or even order disgorgement) of fees is governed by 11 U.S.C. §§ 329, 330. Section 329 requires an attorney to file with the court "a statement of the compensation paid or agreed to be paid...for services rendered or to be rendered in contemplation of or in

-32-

connection with the case by such attorney...."  Section 329(b)
provides that if "such compensation exceeds the reasonable value of
any such services, the court may cancel any such agreement, or
order the return of such payment, to the extend excessive...."
These provisions do not condition the court's authority to order a
fee reduction or disgorgement on a finding of bad faith.

Second, Section 526(a)(1) provides that a debt relief agency
shall not "fail to perform any service that such agency inform an
assisted person or prospective assisted person it would provide in
connection with a case or proceeding under this title...."  Section
526(a)(2) states that a debt relief agency shall not "make any
statement, or counsel or advise any assisted person or prospective
assisted person to make a statement in a document filed in a case
or proceeding under this title, that is untrue or misleading, or
that upon exercise of reasonable care, should have been known by
such agency to be untrue or misleading...." Section 526(c)(c)(2)
provides a remedy failing to comply with section 526, the
Bankruptcy Code, or the Federal Rules of Bankruptcy Procedure:

> Any debt relief agency shall be liable to an assisted
> person in the amount of any fees or charges in connection
> with providing bankruptcy assistance to such person that
> such debt relief agency has received, for actual damages,
> and for reasonable attorneys' fees and costs if such
> agency is found, after notice and a hearing, to have--
>
> (A) intentionally or negligently failed to comply with
> any provision of this section, section 527, or section

-33-

528 with respect to a case or proceeding under this title for such assisted person;

(B) provided bankruptcy assistance to an assisted person in a case or proceeding under this title that is dismissed or converted to a case under another chapter of this title because of such agency's intentional or negligent failure to file any required document including those specified in section 521; or

(C) intentionally or negligently disregarded the material requirements of this title or the Federal Rules of Bankruptcy Procedure applicable to such agency.

Relief under these provisions does not require an independent showing of bad faith, but can be grounded solely on evidence of negligence.

Third, 11 U.S.C. § 528 imposes certain requirements on debt relief agencies, including the requirement to "execute a written contract with such assisted person that explains clearly and conspicuously (A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment...."  Section 528(a)(2) further requires a debt relief agency to provide its client with "a copy of the fully executed and completed contract...."  Section 526(c)(1) provides that any contract that violates section 528 "shall be void and may not be enforced...."  Like the provisions previously discussed, these provisions do not require an independent showing of bad faith.

Fourth, even if these provisions do require an independent showing of bad faith, the record supports a finding of bad faith

-34-

with respect to Defendants.  As Defendants point out in their post-trial brief, a finding of bad faith requires "dishonesty of belief, purpose or motive."  (Defendants' Post-Trial Brief at 50) (citing Black's Law Dictionary (10th Ed. 2014)).  He argues that a finding of bad faith requires a showing of "conduct that is 'atypical' and 'extraordinary'" (<u>Id</u>.)  (Quoting <u>Marrama v. Citizens Bank of Massachusetts</u>, 549 US 365, 382 (2007)).  (Quoting <u>Goldin v. Bartholow</u>, 166 F3d 710, 723 (5th Cir. 1999)).  Defendants argue that bad faith requires evidence of a "high level of culpability."  The record supports a finding that Defendants acted with bad faith in failing to exercise his professional obligations under the Federal Rules and Louisiana Rules of Professional Conduct to oversee his staff and ensure that the documents filed under his signature were true and accurate.  The court finds that Defendants' failure to satisfy these obligations resulted in a pervasive scheme to impersonate debtors during credit counseling briefing sessions and to file false Credit Counseling Verifications in at least these eleven cases and, according to the testimony of former employees, many more cases.  Defendants' actions not only resulted in the filing of false pleadings, but resulted in the filing of cases for debtors who were not eligible to file for relief under Chapter 13. The court finds Defendants' conduct to be "atypical" and "extraordinary" and to display "dishonesty of belief, purpose or motive."  Given the extent of the fraudulent filings with the

-35-

court, the court concludes that Defendants acted with a "high level of culpability."

### 2. Disgorgement and Penalties

The court finds in favor of the Trustee's request for disgorgement on at least three independent grounds. First, the fees and expenses paid for each of the eleven cases must be disgorged under section 329(b) on the grounds that any fees charged and paid in these cases were excessive. Specifically, regardless of the outcome of these cases, the Defendants' actions amounted to a fraud upon the court and resulted in the filing of eleven cases for debtors who were ineligible to file for relief under Chapter 13. The fact that these debtors may have received some services in connection with those cases and received some relief as a result of the filing of their cases is irrelevant. They were ineligible to file a bankruptcy case and Defendants misrepresented their eligibility to the court. Defendants are not entitled to collect any fees on cases fraudulently filed for ineligible debtors.

Second, the Trustee is entitled to disgorgement under 11 U.S.C. § 526(c)(c)(2). As the court has found, Defendants' staff systematically impersonated debtors during credit counseling briefings and filed false Credit Counseling Verifications with the court under Chesson's signature. Despite Chesson's claims that he did not know about or direct these actions, at a minimum, Chesson's

-36-

failure to oversee his law practice amounts to negligence. This negligence resulted in repeated and systematic violations of section 526(a)(2) (prohibition against filing false and misleading pleadings).

Third, Defendants' violations of section 528 in the seven cases identified by the Trustee support disgorgement under 11 U.S.C. § 526(c)(1). Section 526(c)(1) states that "[a]ny contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person." These violations also trigger section 526(c)(2). Taken together, the section 528 violations support the Trustee's request for disgorgement in the seven cases where Chesson did not sign the client contracts.

Finally, the record supports the Trustee's request for civil penalties under 11 U.S.C. § 526(c)(5). Chesson's staff violated section 526(a)(2) by causing the clients in these 11 cases to sign false Credit Counseling Verifications, and then filed these false verifications with the court. These verifications were filed under Chesson's electronic signature using his CM/ECF password. Defendants suggest that they are not liable under section 526(c)(5) because the record does not support a finding that he knowingly or

-37-

intentionally engaged in the fraudulent scheme orchestrated by his staff. This argument misreads the text of section 526(c)(5). The placement of the comma in section 526(c)(5) creates two distinct categories of violations under this provision (1) an individual violation that is "intentional," and (2) a "clear and consistent pattern or practice" of violations. The requirement of intent does not apply to the second – "clear and consistent pattern or practice" – category based on the text of the statute. Reading this provision otherwise would render the "clear and consistent pattern or practice" clause superfluous. The court finds that Defendants engaged in a clear consistent pattern or practice of violating section 526 by impersonating debtors during credit counseling briefings and filing false pleadings with the court.

In sum, the court finds in favor of the Trustee on its request for disgorgement and penalties under Counts I through IV of his complaint. The court orders that, within fourteen (14) days, Chesson provide the Trustee with an accounting of all fees and expenses collected in the eleven cases identified in the Trustee's complaint. Within fourteen days after providing the Trustee with a copy of this accounting, Chesson is ordered to disgorge all fees and expenses. The court also finds that the Trustee is entitled to relief on his claims for penalties under 11 U.S.C. § 526(c). Accordingly, in light of the number of cases at issue, the court

-38-

awards a civil penalty of FIVE THOUSAND AND NO/100 ($5,000) DOLLARS above and beyond the amounts disgorged as fees and expenses. This penalty shall be paid to the  Trustee within fourteen (14) days. The Trustee shall use the disgorged fees and penalties received to set up a compensation fund for client affected by Defendants' violations of section 526 and section 528.

### 3.    Non-Monetary Remedial Relief

The court now turns to remedial action to ensure future compliance with the Bankruptcy Code's requirements on credit counseling briefings and filing of the Credit Counseling Verifications. Wade Kelly and Chesson both testified about changes in the law office's procedures designed to prevent the recurrence of the prior practices that resulted in the filing of false Credit Counseling Verifications.  For example, Mr. Kelly testified that video cameras were installed in the room where clients take credit counseling briefings online and that he will periodically monitor clients during their online briefings. (2 Tr. Trans. 250-51, 257-59, 312, 314).  While the court finds that these measures are steps in the right direction as far as compliance with the Bankruptcy Code, they are not in themselves sufficient to ensure compliance given Defendants' prior conduct.  For example, Defendants state that "none of the paralegals who allegedly falsified credit counseling are still employed by defendants...."  (Defendants'

Post-Trial Brief at 61). This assertion is not true because the record reflects that Karla Latour is still involved in the filing of Chapter 13 cases. The court has expressly found by clear and convincing evidence that Ms. Latour had knowledge of and oversaw the practices that resulted in the filing of false Credit Counseling Verifications. It is unclear whether additional employees not identified in the Trustee's complaint or in the record may also have some involvement in or knowledge of the falsification of Credit Counseling Verifications. At a minimum, any employee involved in the past practices resulting in fraudulent filings should be screened from any involvement in the filing of consumer bankruptcy cases under Chapter 7 or Chapter 13 of the Bankruptcy Code. To ensure that Chesson's remedial actions are fully transparent and sufficient to ensure future compliance with the Bankruptcy Code, the court orders as follows:

1. Within **twenty (20) days,** Defendants shall file a written remediation plan that enumerates all the remedial actions that have been taken as well as any future proposed remediation actions to ensure compliance with the Bankruptcy Code's credit counseling requirements;

2. Within **twenty (20) days** after filing this remediation plan, Defendants are ordered to meet and confer with the Office of the United States Trustee on any objections that the Trustee may have to the proposed remediation plan;

-40-

3.  If the parties are unable to resolve the
    Trustee's objections to Defendants'
    remediation plan, the Trustee shall file its
    written objections to that remediation plan
    within **twenty (20) days** of the meet and confer
    meeting with Defendants; and

4.  This requirement will be deemed satisfied upon
    the acceptance by the Trustee without further
    objections, or upon a ruling by the court
    approving the remediation plan over the
    objections of the Trustee.

The court further orders that the remediation plan include a
requirement that Chesson and his staff attend a Trustee-approved
educational course that, at a minimum, covers the ethics and the
duties of a "debt relief agency" under the Bankruptcy Code.
Finally, the remediation plan should include a requirement that
Defendants turn over copies of all Credit Counseling Verifications
with "wet signatures" dated from July 2014 through April 2016. The
court orders that, until a remediation plan has been agreed to by
the Trustee or approved by the court, Defendants are barred from
filing any new Chapter 13 cases. The court orders this relief
under 11 U.S.C. § 105 and its inherent power to regulate the
attorneys practicing before the bankruptcy court.

### 4.  Disciplinary Action

Finally, the court will address the Trustee's request for
disciplinary action against Chesson. The Trustee argues that
Chesson should be disbarred from practice before the United States

Bankruptcy Court for the Western District of Louisiana. Chesson contends that the lack of evidence showing a fraudulent scheme and his involvement in any such scheme precludes any disciplinary action. The court finds that the record supports disciplinary action against Chesson, but not the remedy of disbarment recommended by the Trustee. Chesson's breach of his professional duties as far as oversight of his paralegals and his failure to ensure the veracity of pleadings filed under his electronic signature in the eleven cases covered by the Trustee's complaint mandates a disciplinary sanction. In the Chang case, the court suspended Chang for a period of one year based on a similar scheme involving the filing of false Credit Counseling Verifications. As in this case, Chang argued that she had no knowledge that her employees had filed false pleadings under her electronic signature. While the court found no evidence that Chang was involved in the fraudulent conduct of her employees, the court found that she failed to adequately supervise her employees and ensure the veracity of documents filed with the court. Nevertheless, the court in Chang rejected the trustee's request that Chang be disbarred, and, instead ordered the one-year suspension.

The court finds that the disciplinary sanction adopted by the Chang court is a reasonable sanction in the present case. Local Rule 83.2.4 of the Local Rules of the United States District Court

-42-

for the Western District of Louisiana provide that attorneys practicing in the Western District--including those attorneys practicing in Bankruptcy Court--are governed by the Louisiana State Bar Association Rules of Professional Conduct.  Louisiana Rule of Professional Conduct 5.3 provides that a supervising attorney must make reasonable efforts to ensure that the conduct of his non-lawyer assistants is compatible with the professional obligations imposed on attorneys.  Similarly, Louisiana Rule 3.1 provides that an attorney may not bring a proceeding without a basis in law or fact.  Here, Chesson filed false Credit Counseling Verifications under his electronic signature without ensuring the veracity of those pleadings or adequately supervising his employees and ensuring that their actions complied with the Rules of Professional Conduct.  Louisiana Rule 8.4 also prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation.  As the court has found above, the actions of Defendants' employees breached this rule in each of these eleven cases.  Accordingly, the court refers Christian Chesson to the United States District Court for the Western District of Louisiana for disciplinary actions.  The court recommends that Chesson be suspended from practice in the Western District of Louisiana for a period of one year under Local Rule 83.2.10.  Under this same local rule, the court orders that Chesson be immediately suspended from practice before the United States Bankruptcy Court for the Western District of Louisiana for a period

-43-

of ninety (90) days. The court orders the Bankruptcy Clerk's office to immediately suspend Chesson's CM/ECF password. The court further recommends that Chesson's reinstatement following his suspension be contingent on his satisfaction of the relief entered in this order including: (1) disgorgement of fees and payment of monetary penalties awarded by the court, and (2) the approval and implementation of the remediation plan ordered by the court in this ruling.

### CONCLUSION

In sum, Chesson's abdication of his professional responsibilities resulted in a pervasive scheme to subvert the credit counseling requirements of the Bankruptcy Code and enable the filing of at least eleven (and likely many more) cases for ineligible debtors based on false Credit Counseling Verifications. As outlined above, the court orders disgorgement of fees and civil penalties in the affected cases, remedial relief, and disciplinary sanctions. In all other respects, the relief requested by the Trustee is denied.

A Judgment in conformity with the foregoing reasons has this date been entered into the record of this proceeding.

###